UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------

|   |   |   |
|---|---|---|
| NICOLA RUHL, et al., | : | CASE NO. 16-CV-773 |
| Plaintiffs, | : | |
| vs. | : | OPINION & ORDER |
|   | : | [Resolving Docs. 10 & 15] |
| THE STATE OF OHIO DEPARTMENT OF HEALTH, et al., | : | |
| Defendants. | : | |

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiffs W.R. and Nicola and Gary Ruhl make eight claims against the Ohio Department of Health, the Richland County Board of Developmental Disabilities, and Ohio's IDEA Part C Coordinator Wendy Grove.[1] Plaintiffs say that Defendants refused to provide W.R., a child with autism, an essential early intervention service called applied behavioral analysis therapy.

Claims one and two allege violations of the Individuals with Disabilities Education Act, Part C ("IDEA Part C").[2] Claims three through eight assert violations of the Rehabilitation Act § 504, Americans with Disabilities Act, Title II, procedural due process, and equal protection, and allege breach of fiduciary duty and intentional infliction of emotional distress, respectively.[3]

Defendants Ohio Department of Health and Grove move to dismiss claims three through eight. Defendant Grove moves to dismiss all claims against her. Groves says the claims against her fail to state a claim and she says this Court does not have subject matter jurisdiction for the

---

[1] Doc. 1.
[2] *Id.* Defendants do not move to dismiss claims one and two; they therefore survive.
[3] *Id.*

Case No. 16-cv-773
Gwin, J.

claims against her..[4] Plaintiffs move to strike the part of Ohio Department of Health's reply brief that introduces statute of limitations issues.[5]

For the following reasons, this Court **GRANTS** Defendants' motion to dismiss Plaintiffs' Rehabilitation Act § 504, Americans with Disabilities Act, Title II, procedural due process, and equal protection violation claims and **GRANTS** Defendants' motion to dismiss the state law claims for lack of subject matter jurisdiction. The Court **DENIES** Plaintiffs' motion to strike as moot.[6]

### I. Background and Procedural History

Congress, through IDEA Part C, funds and governs state provision of early intervention services for infants and toddlers with disabilities aged 0-3.[7] IDEA Part C's attempts to "enhance the development of infants and toddlers with disabilities, to minimize their potential for developmental delay, and to recognize the significant brain development that occurs during a child's first 3 years of life."[8]

Help Me Grow is Ohio's early intervention system under IDEA Part C.[9] Defendant Ohio Department of Health is the lead agency for Ohio's Help Me Grow system.[10] Defendant Richland County Board of Developmental Disabilities acts as an agent for Ohio Department of Health and provides the early intervention services for Ohio's Help Me Grow system in Richland County.[11] Defendant Grove was the Coordinator for Ohio's Help Me Grow system at all relevant times to this case.[12]

---

[4] Doc. 10. Plaintiffs responded in opposition, Doc. 12, and Defendants replied, Doc. 14.
[5] Doc. 15. Defendants opposed, Docs. 17, 19, and Plaintiffs replied, Doc. 18.
[6] Neither party contends that the statute of limitations defense would completely dispose of a claim.
[7] *See* 20 U.S.C. § 1431(a).
[8] *Id.*
[9] Doc. 1 at ¶ 6.
[10] *Id.* at ¶ 29.
[11] *Id.* at ¶ 30.
[12] *Id.* at ¶ 31.

Case No. 16-cv-773
Gwin, J.

Plaintiff W.R., born June 13, 2011, began receiving services from Help Me Grow in November 2011 for torticollis.[13] Before W.R.'s first birthday, Plaintiff Nicola Ruhl informed Help Me Grow of her concern that W.R. had autism.[14]

Nicola Ruhl's concern continued through the summer of 2012, and she privately arranged for Nationwide Children's Hospital to assess W.R. for autism.[15] In April 2013, Nationwide Hospital diagnosed W.R.'s autism and significant impairment in socialization and communication skills.[16] Nationwide directed that W.R. "should participate in autism-specific programming based on principles of applied behavior analysis."[17]

Before December 2013, Help Me Grow did not provide applied behavior analysis therapy as an early intervention service for children with disabilities.[18] Rather, it only paid for a short one-time consultation up to $450.[19]

The United States Department of Education instructed Ohio and other states that "After an [Individualized Family Service Plan] has been completed and the parents consent to the provision of the identified services, the State is required to provide all services identified on the child's [Individualized Family Service Plan] and to ensure that those services are implemented according to the [Individualized Family Service Plan]."[20]

On June 27, 2013, the United States Department of Education notified Ohio that Ohio has a "responsibility to make [applied behavior analysis] therapy available as a service or a method if

---

[13] *Id.* at ¶¶ 32-33.
[14] *Id.* at ¶ 34.
[15] *Id.* at ¶¶ 37-38.
[16] *Id.* at ¶ 41.
[17] *Id.*
[18] *Id.* at ¶¶ 42, 44, 65.
[19] *Id.* at ¶ 54.
[20] *Id.* at ¶ 72.

-3-

Case No. 16-cv-773
Gwin, J.

the child's [Individualized Family Service Plan] team identifies such a service as necessary to meet the unique developmental needs for a particular infant or toddler with a disability."[21]

In mid-December 2013, Ohio Department of Health began funding applied behavior analysis therapy for Plaintiff W.R.[22]

On September 2, 2015, Plaintiffs filed an IDEA Part C administrative due process complaint against Ohio Department of Health and Richland County Board of Developmental Disabilities.[23] A private lawyer hearing officer heard the complaint and denied Plaintiffs compensatory IDEA relief for Plaintiffs' failure to prove that Plaintiffs met the financial eligibility requirements under Help Me Grow.[24]

Plaintiffs now seek review and appeal of that administrative decision.[25] Plaintiffs bring eight claims against both Ohio Department of Health and Richland County Board of Developmental Disabilities, and four claims against Grove.[26]

Defendants Ohio Department of Health and Grove move the Court to dismiss all non-IDEA Part C claims against them.[27] Specifically, Defendants move to dismiss Plaintiffs' claims under the Rehabilitation Act § 504; the Americans with Disabilities Act, Title II; deprivation of protected property right without procedural due process; and deprivation of equal protection of the laws for failure to state a claim upon which relief could be granted.[28] Defendants additionally

---

[21] *Id.* at ¶ 84.
[22] *Id.* at ¶ 88.
[23] *Id.* at ¶ 2.
[24] *Id.*; Doc. 10 at 9.
[25] Doc. 1 at ¶ 2.
[26] *Id.*
[27] Doc. 10. Defendants do not move to dismiss claim one for IDEA Part C deprivation of intervention or claim two for IDEA Part C deprivation of compensatory services and reimbursement. Rather, Defendants seek to frame the claims as an appeal from the administrative hearing decision, and argue that any class claims are not well pleaded. *Id.* at 8. Therefore, claims one and two survive.
[28] *Id.*

Case No. 16-cv-773
Gwin, J.

move to dismiss Plaintiffs' claims for breach of fiduciary duty and intentional infliction of emotional distress for lack of subject matter jurisdiction.[29]

With their opposition, Plaintiffs argue that their non-IDEA federal claims are all cognizable and justiciable because Defendants Ohio Department of Health and Grove "were intentionally indifferent to W.R.'s essential rights and needs."[30] Plaintiffs voluntarily dismiss their state law claims against both Ohio Defendants and their due process and equal protection claims against Ohio Department of Health.[31]

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[32] The plausibility requirement is not "akin to a probability requirement," but requires "more than a sheer possibility that the defendant has acted unlawfully."[33]

Federal Rule of Civil Procedure 8 provides the general standard of pleading and only requires that a complaint "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."[34] "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."[35]

---

[29] *Id.*
[30] Doc. 12 at 4.
[31] *Id.* at 4, 14.
[32] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[33] *Id.*
[34] Fed. R. Civ. P. 8(a)(2).
[35] *Iqbal*, 556 U.S. at 678-79 (citations omitted).

Case No. 16-cv-773
Gwin, J.

## III. Discussion

*A. Rule 12(b)(6) Motions to Dismiss for Failure to State a Claim*

### 1. Legal Standard

A court may grant a motion to dismiss only when "it appears beyond doubt" that the plaintiff fails to state a claim upon which relief may be granted.[36] In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the[] veracity" of "well-pleaded factual allegations."[37]

### 2. Rehabilitation Act § 504 and Americans with Disabilities Act, Title II Claims

Plaintiffs allege violations of the Rehabilitation Act § 504 and the Americans with Disabilities Act, Title II. Section 504 of the Rehabilitation Act prohibits discrimination based "solely" on disability for access to IDEA Part C benefits.[38]

Title II of the Americans with Disabilities Act similarly provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[39]

The Rehabilitation Act and the Americans with Disabilities Act should be interpreted consistently.[40]

To make out a prima facie case under either Act, Plaintiffs must allege that W.R. (1) has a disability; (2) is otherwise qualified; and (3) was excluded from participation in, denied the

---

[36] Fed. R. Civ. P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 45 (1957).
[37] *Iqbal*, 556 U.S. at 678-79.
[38] "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a); *see also* 28 C.F.R. § 42.503.
[39] 42 U.S.C. § 12132.
[40] *Zibbell v. Mich. Dep't of Human Servs.*, 313 F. App'x 843, 849 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)).

Case No. 16-cv-773
Gwin, J.

benefits of, or subjected to discrimination under the program because of his disability.[41] In other words, Plaintiffs must present evidence that "animus against the protected group" motivated the agency actors' decisions.[42] The Rehabilitation Act requires proof of an additional element: the relevant program or activity must receive Federal financial assistance.[43]

With their motion to dismiss, Defendants argue that Plaintiffs' allegations "amount to 'nothing more than a "formulaic recitation of the elements"' of a discrimination claim."[44] Defendants also say that Plaintiffs failed to plead that W.R. was denied services *because* he was disabled. Instead, Defendants say Plaintiffs only allege that (1) W.R. is disabled, and (2) W.R. was denied an early intervention service.[45] This Court agrees. At its core, Plaintiffs complain that Defendants should have found W.R. qualified for certain IDEA benefits. Plaintiffs do not allege Defendants denied the benefits *because* W.R. was disabled.

Plaintiffs allege that Defendants discriminated against W.R. based on his autism by denying applied behavior analysis therapy, but they present no support for a claim of intentional discrimination.[46] Simply not providing the applied behavioral analysis therapy does not equate to discrimination based on disability. Any child eligible for services under IDEA Part C must be

---

[41] *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).
[42] *Id.* (citing *Turner v. City of Englewood*, 195 Fed.Appx. 346, 353 (6th Cir. 2006)).
[43] *Center v. City of W. Carrollton*, 227 F. Supp. 2d 863, 867 (S.D. Ohio 2002) (citing *Livingston v. United States Postal Serv.*, 1998 WL 791828 (6th Cir. 1998)).
[44] Doc. 10 at 21 (citing *Iqbal*, 556 U.S. at 681).
[45] *Id.* at 21-22. Defendants rely on Third Circuit precedent to argue that a Rehabilitation Act claim is not properly plead "simply by proving (1) that [the child] was denied some service and (2) [the child] is disabled." *Andrew M. v. Delaware Cty. Office of Mental Health & Mental Retardation*, 490 F.3d 337, 350 (3d Cir. 2007). *Andrew M.* is not binding on this Court; nevertheless, it is persuasive. There, the plaintiffs used the same facts to plead their IDEA Part C and Rehabilitation Act claims. The court held that the Rehabilitation Act claim—having different elements from the IDEA Part C claim—was insufficient because there was no evidence that the disability was the cause of the discrimination or denial of benefits or services.
[46] *See* Doc. 1 ¶¶ 73, 75, 77 (describing "systematic deprivation," but no disability-motivated discrimination).

-7-

Case No. 16-cv-773
Gwin, J.

disabled.[47] Therefore, W.R. was not treated differently than any other child entitled to services under IDEA Part C.[48]

Furthermore, Plaintiffs do not meet the *Twombly-Iqbal* standard of pleading. Plaintiffs' complaint does no more than make "naked assertions devoid of further factual enhancement" concerning evidence of intentional discrimination.[49] Plaintiffs' complaint does not adequately allege that Defendants discriminated against W.R. because of his disability.

Finally, IDEA creates a comprehensive compensation scheme and comprehensive benefits review scheme. Accordingly, Plaintiffs cannot attempt to bypass that remedy through compensation under the Rehabilitation Act or the Americans with Disabilities Act.[50]

The Court **GRANTS** Defendants' Rule 12(b)(6) motion to dismiss Plaintiffs' Rehabilitation Act § 504 and Americans with Disabilities Act, Title II claims.

### 3. Procedural Due Process and Equal Protection Claims

Plaintiffs next allege lack of due process before deprivation of their protected property rights and their equal protection rights. Even though Plaintiffs couch their due process and equal

---

[47] *See* 20 U.S.C. § 1431(a).

[48] Plaintiffs unpersuasively rely on cases where Rehabilitation Act claims were brought alongside alleged violations of IDEA Part B. *See* Doc. 12 at 6-7. IDEA Part B provides, "states accepting federal funds must provide children of a certain age a free and appropriate public education." 20 U.S.C. § 1412. Under IDEA Part B, one can discern discrimination based on disability if only disabled children are denied "a free and appropriate public education" because both disabled and non-disabled children are entitled to that education.

[49] *See Iqbal*, 556 U.S. at 678.

[50] *Cf. Long v. Dawson Springs Indep. Sch. Dist.*, 197 F. App'x 427, 432 (6th Cir. 2006) (upholding dismissal of a § 1983 claim because "[t]he existence of express remedies in [IDEA's] statutory scheme demonstrates that Congress intended to supplant other remedies that might otherwise be available to complainants"); *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 29 (1st Cir. 2006) (holding that "§ 1983 cannot be used to escape the strictures on damages under the IDEA"); *Horen v. Bd. Of Educ. of Toledo City Sch. Dist.*, 594 F. Supp. 2d 833, 845 (N.D. Ohio 2009) ("Parents cannot cloak an IDEA claim as a § 1983 claim to receive compensatory or punitive damages.").

-8-

Case No. 16-cv-773
Gwin, J.

protection claims as constitutional rights violations, they cite to violations of the IDEA.[51]

Therefore, Plaintiffs actually seek to enforce IDEA Part C claims under 42 U.S.C. § 1983.[52]

Section 1983 is not available to remedy violations of IDEA because IDEA creates a comprehensive compensation scheme.[53] Plaintiffs cannot use procedural due process or equal protection to circumvent the remedy provided by IDEA.

Accordingly, Plaintiffs have not alleged a claim upon which relief can be granted. The Court **GRANTS** Defendants' motion to dismiss Plaintiffs' procedural due process and equal protection claims.

*B. Rule 12(b)(1) Motions to Dismiss for Lack of Subject Matter Jurisdiction*

**1. Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(1) may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction.[54] When a defendant challenges subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing that the Court has subject matter jurisdiction over his claim.[55]

**2. State Law Claims: Breach of Fiduciary Duty and Intentional Infliction of Emotional Distress**

Defendants first argue that this Court lacks subject matter jurisdiction over Plaintiffs' state law claims because they constitute "'claims against nonconsenting state defendants.'"[56] Plaintiffs voluntarily dismiss their state law claims against both Ohio Defendants.[57]

---

[51] Doc. 1 ¶¶ 106-113.
[52] *See* Doc. 10 at 14-15. Plaintiffs, in their opposition, voluntarily dismiss their due process and equal protection claims against Ohio Department of Health. Doc. 12 at 14. Ohio Department of Health was not a "person" amenable to suit under § 1983. *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 654 (6th Cir. 2007).
[53] *Horen v. Bd. Of Educ. of Toledo City Sch. Dist.*, 594 F. Supp. 2d 833, 845 (N.D. Ohio 2009) ("Parents cannot cloak an IDEA claim as a § 1983 claim to receive compensatory or punitive damages."); *see also Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 29 (1st Cir. 2006) (holding that "§ 1983 cannot be used to escape the strictures on damages under the IDEA").
[54] *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005).
[55] *Hedgepeth v. Tennessee*, 215 F.3d 608, 611 (6th Cir. 2000).
[56] Doc. 10 at 22 (citing *Raygor v. Regents of Univ. of Minnesota*, 534 U.S. 533, 542 (2002)).

Case No. 16-cv-773
Gwin, J.

Defendants next argue that this Court lacks subject matter jurisdiction over Plaintiffs' state law claims against Defendant Grove in her individual capacity because she is immune from suit.[58]

The Sixth Circuit found that:

> Ohio law requires that, as a condition precedent to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in Revised Code section 9.86. Prior to that condition being satisfied, then, there is no claim under Ohio law upon which relief may be granted against state employees in their individual capacities.[59]

The Court of Claims has not made a determination regarding Grove's entitlement to immunity. Therefore, Grove may avail herself of Ohio state-employee immunity.

Accordingly, this Court **GRANTS** Defendants' motion to dismiss Plaintiffs' state law claims for breach of fiduciary duty and intentional infliction of emotional distress.

### IV. Conclusion

For the reasons above, this Court **GRANTS** Defendants' motion to dismiss consistent with this opinion. This Court **DENIES** Plaintiffs' motion to strike as moot.

IT IS SO ORDERED.

Dated: July 26, 2016  　　　　　　　　　　　　　　　*s/        James S. Gwin*
　　　　　　　　　　　　　　　　　　　　　　　　　　JAMES S. GWIN
　　　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

[57] Doc. 12 at 14.
[58] O.R.C. § 9.86; Doc. 10 at 23. As far as Defendant Grove is sued in her official capacity, she is immune under the Eleventh Amendment. *Experimental Holdings, Inc. v. Farris,* 503 F.3d 514, 520–21 (6th Cir. 2007) (citing *Pennhurst State Sch. v. Halderman,* 465 U.S. 89, 117–21 (1984)).
[59] *McCormick v. Miami Univ.*, 693 F.3d 654, 665 (6th Cir. 2012) (quoting *Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989)).