UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------

NICOLA RUHL, et al., : CASE NO. 1:16-CV-773
:
    Plaintiffs, :
:
vs. : OPINION & ORDER
: [Resolving Docs. 48, 49 & 56]
THE STATE OF OHIO :
DEPARTMENT OF HEALTH, et al., :
:
    Defendants. :
:

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    Plaintiffs W.R., Nicola and Gary Ruhl allege that Defendants State of Ohio Department of Health, the Richland County Board of Developmental Disabilities, and Ohio IDEA Part C Coordinator Wendy Grove violated the Individuals with Disabilities Education Act, Part C ("IDEA Part C").[1] Plaintiffs' complaint specifically alleges that for approximately six months the Defendants failed to provide W.R., a child with autism, an early intervention service called applied behavioral analysis ("ABA") therapy.[2]

    On March 22, 2016, administrative hearing examiner Linda Mosbacher concluded that the Plaintiffs failed to demonstrate that Defendants denied W.R. services or funding required under IDEA Part C.[3] Accordingly, the hearing examiner denied Plaintiffs' claims.[4]

---

[1] Doc. 1.
[2] *Id.* at 2.
[3] Doc. 1-1 at 15.
[4] *Id.*

Plaintiffs appealed the hearing examiner's decision to this Court.[5] Plaintiffs also move for summary judgment[6] and to strike Defendant Ohio Department of Health's statute of limitations arguments.[7]

For the reasons below, the Court **AFFIRMS** the hearing examiner's decision and **DENIES** Plaintiffs' motions for summary judgment and to strike.

## I. Background

Congress, through IDEA Part C, funds and governs states' provision of early intervention services for infants and toddlers with disabilities.[8] At issue in this case is whether Defendant Ohio Department of Health violated IDEA Part C by denying Plaintiff W.R. early intervention services or funding in the six months following W.R.'s autism diagnosis.

In April 2013, Nationwide Children's Hospital diagnosed two-year-old W.R with autism and significant impairment in socialization and communication skills.[9] Nationwide gave the opinion that W.R. "should participate in autism-specific programming based on principles of applied behavior analysis."[10]

On May 2, 2013, Plaintiff Nicola Ruhl, W.R.'s mother, emailed Defendant Wendy Grove, Ohio's IDEA Part C Coordinator, seeking information about the availability of publicly funded applied behavior analysis (ABA) services.[11] Grove responded that Help Me Grow, Ohio Department of Health's IDEA Part C early intervention system, did not provide ABA therapy as an early intervention service for children with disabilities.[12] Apparently, the Ohio Department of

---

[5] Doc. 1 at 2.
[6] Doc. 48.
[7] Doc. 56.
[8] *See* 20 U.S.C. § 1431(a).
[9] Doc. 38-5 at 153-161 (sealed).
[10] *Id.* at 155.
[11] *Id.* at 177-78.
[12] Doc. 38-9 at 26-27 (sealed).

Health had adopted a uniform policy not to provide the early intervention service. In June 2013, Defendant Richland Newhope, Richland County's Board of Developmental Disabilities, informed the Ruhls that Richland County did not provide ABA services either.[13]

The Ruhls obtained private ABA services for W.R. from May or June 2013 until December 10, 2013.[14] Each week, W.R. received four hours of ABA therapy, which cost $120 per four hours.[15]

On June 27, 2013, the United States Department of Education notified Defendant Ohio Department of Health that Ohio's blanket policy not to provide ABA therapy was wrong and notified Ohio that Ohio needed to make ABA therapy available to infants and toddlers with disabilities.[16] On September 5, 2013, Ohio's Help Me Grow began funding ABA therapy to those who demonstrated financial eligibility.[17] Help Me Grow established the Early Intervention System of Payments (EISOP) to handle payments for early intervention services like ABA therapy.[18]

On November 18, 2013, the Ruhls applied for EISOP funding of W.R.'s ABA services.[19] A week later, Defendant Ohio Department of Health denied the application because the Ruhls' income exceeded the eligibility threshold.[20]

The Ruhls subsequently qualified for ABA services by showing medical expenditures sufficient to qualify for EISOP cost share. On December 18, 2013, the Ohio Department of Health found the Ruhl family to be eligible for publicly funded ABA services, effective

---

[13] Doc. 38-5 at 246-48 (sealed).
[14] Doc. 38-9 at 24-25 (sealed).
[15] *Id.* at 24, 90.
[16] Doc. 38-6 at 229-31 (sealed).
[17] Doc. 38-5 at 278-91 (sealed).
[18] Ohio Admin. Code 3701-8-08.
[19] Doc. 38-3 at 34 (sealed).
[20] *Id.*

Case No. 1:16-CV-773
Gwin, J.

December 3, 2013.[21] From December 2013, W.R. received publicly funded ABA therapy that continued until June 2014 when W.R. aged out of Help Me Grow on his third birthday.[22] W.R. then transitioned to IDEA Part B services from Defendant Richland Newhope and his local school district.[23]

*Procedural History*

With this lawsuit, the Plaintiffs face arguments that the statute of limitations stops many of their claims.

On September 18, 2014, the Plaintiffs sued the Ohio Department of Health, Ohio IDEA Part C Coordinator Wendy Grove, and the United States Department of Education for "systemically, intentionally, and categorically refus[ing] to provide necessary IDEA Part C early intervention services to all infants and toddlers with autism in Ohio."[24] Plaintiffs brought IDEA Part C, Rehabilitation Act § 504, Americans with Disabilities Act (ADA), procedural due process, equal protection, breach of fiduciary duty, and intentional infliction of emotional distress claims. United States District Judge Lesley Wells dismissed the Plaintiffs' claims because Plaintiffs had not exhausted their administrative remedies.[25]

The Sixth Court of Appeals affirmed the district court's dismissal for failure to exhaust.[26] The Sixth Circuit also noted that the Plaintiffs could not "seek relief on behalf of 'all infants and toddlers with autism in Ohio' . . . in an individual suit."[27]

---

[21] *Id.* at 31-33; Doc. 38-9 at 34 (sealed).
[22] Doc. 38-3 at 33 (sealed).
[23] Doc. 38-9 at 97-98 (sealed).
[24] No. 1:14-cv-2075 Doc. 1 at ¶ 1.
[25] No. 1:14-cv-2075 Doc. 16.
[26] *W.R. v. Ohio Health Dept.*, 651 F. App'x 514, 515 (6th Cir. 2016).
[27] *Id.* at 521.

On September 2, 2015, Plaintiffs filed an IDEA Part C administrative due process complaint against Ohio Department of Health and Richland Newhope.[28] The complaint incorporated the previously dismissed federal complaint's allegations. Plaintiffs alleged that the Ohio Department of Health improperly denied ABA services to W.R. and that W.R. was entitled to three years of compensatory services, reimbursement, and monetary damages.[29] Specifically, Plaintiffs alleged that Defendants had wrongly denied roughly six months of ABA services and alleged that W.R. will need $365,152 "for compensatory ABA services to help W.R. achieve the developmental level he otherwise would have achieved."[30]

Hearing examiner Linda Mosbacher presided over the due process hearing. On March 22, 2016, the hearing examiner denied Plaintiffs relief for their IDEA Part C claims.[31] The hearing officer concluded that claims arising before September 2, 2013 were time barred because of a two-year statute of limitations in IDEA Part C's regulations.[32] Additionally, the hearing officer found that Plaintiffs failed to prove that they met Help Me Grow's financial eligibility requirements before November 2013.[33] The hearing officer also decided that she lacked the statutory authority to award compensatory money damages.[34]

Plaintiffs appealed the hearing examiner's administrative decision to this Court on March 30, 2016.[35] On July 26, 2016, the Court dismissed Plaintiffs' Rehabilitation Act § 504, ADA, procedural due process, and equal protection claims for failure to state a claim.[36] The Court also

---

[28] Doc. 1. at ¶ 2.
[29] Doc. 1-1 at 2-3.
[30] Doc. 1 at 31.
[31] Doc. 1-1 at 15.
[32] *Id.* at 13-14.
[33] *Id.* at 15.
[34] *Id.*
[35] Doc. 1.
[36] Doc. 23 at 6-9. The Court also denied Plaintiffs' motion to reconsider its dismissal of their non-IDEA claims. Doc. 44 at 6-7.

Case No. 1:16-CV-773
Gwin, J.

dismissed Plaintiffs' state law claims for lack of subject matter jurisdiction.[37] The Court later denied Plaintiffs' motion for partial summary judgment on their IDEA Part C claims.[38]

On January 6, 2017, all parties filed opening briefs regarding this Court's review of the hearing examiner's decision.[39] Plaintiffs also filed a motion for summary judgment on their IDEA Part C claims.[40]

Plaintiffs' brief offers little help for reviewing the hearing examiner's decision, but the Court was able to discern three general assignments of error with regard to the hearing examiner's decision. Plaintiffs argue that (1) all of their claims are timely; (2) Plaintiffs were financially eligible for ABA services before November 2013; and (3) a $365,152 award would not be monetary damages, but rather funding for compensatory services.[41]

The parties filed response briefs on February 6, 2017.[42] Plaintiffs also filed a motion to strike the statute of limitations arguments in Defendant Ohio Department of Health's opening brief, claiming the arguments were "false and erroneous."[43]

## II. Legal Standard

Parents who file an IDEA Part C due process complaint are entitled to an impartial due process hearing.[44] At the hearing, an administrative hearing examiner determines "whether an infant or toddler was appropriately identified, evaluated or placed or whether the infant or toddler with a disability and his or her family were appropriately provided early intervention

---

[37] Doc. 23 at 9-10.
[38] Doc. 44 at 4-6.
[39] Doc. 49 (Plaintiffs' brief); Doc. 50 (Ohio Department of Health's brief); Doc. 52 (Richland Newhope's brief).
[40] Doc. 48.
[41] Doc. 49 at 16-25.
[42] Doc. 53 (Richland Newhope's brief); Doc. 54 (Plaintiffs' brief); Doc. 55 (Ohio Department of Health's brief).
[43] Doc. 56. Defendant Ohio Department of Health responds. Doc. 57. Plaintiffs reply. Doc. 58.
[44] 34 C.F.R. § 303.443(a).

services."[45] Parents can appeal the administrative hearing examiner's decision to the proper state or federal district court.[46]

"A district court . . . reviews IDEA cases under a modified de novo standard, meaning that it may set aside administrative findings in an IDEA case 'only if the evidence before the court is more likely than not to preclude the administrative decision from being justified based on the agency's presumed educational expertise, a fair estimate of the worth of the testimony, or both.'"[47] "'Less weight is due to an agency's determinations on matters for which educational expertise is not relevant because a federal court is just as well suited to evaluate the situation.'"[48] "More weight, however, is due to an agency's determinations on matters for which educational expertise is relevant."[49]

### III. Discussion

Plaintiffs raise three assignments of error regarding the hearing examiner's decision. First, Plaintiffs argue that equitable tolling saves claims before September 2, 2013.[50] Alternatively, Plaintiffs say that relief is still available for the time-barred portion of their claims because the violation continued after September 2, 2013.[51] Second, Plaintiffs argue that they were financially eligible for publicly funded ABA therapy before November 2013, but the Ohio Department of Health impeded the prompt filing of their application.[52] Third, Plaintiffs argue

---

[45] 34 C.F.R. § 303.445(a).
[46] 20 U.S.C. § 1439(1) ("Any party aggrieved by the findings and decision regarding an administrative complaint shall have the right to bring a civil action with respect to the complaint in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.").
[47] *Bd. of Educ. of Fayette County v. L.M.*, 478 F.3d 307, 312-13 (6th Cir. 2007) (quoting *Berger v. Medina City Sch. Dist.*, 348 F.3d 513, 519 (6th Cir. 2003)).
[48] *Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 849 (6th Cir. 2004) (quoting *McLaughlin v. Holt Pub. Sch. Bd. of Educ.*, 320 F.3d 663, 669 (6th Cir. 2003)).
[49] *Id.* (internal quotation marks omitted).
[50] Doc. 49 at 17-19.
[51] *Id.* at 20-21.
[52] Doc. 54 at 8-10.

that they should receive $365,152 and that such an award would be funding for prospective compensatory services, not monetary damages.[53]

**A. The hearing officer properly applied a two-year statute of limitations to the Ruhls' claims.**

The hearing examiner applied a two-year statute of limitations to Plaintiffs' claims.[54] Because Plaintiffs filed their due process complaint on September 2, 2015, the hearing examiner limited relief to violations occurring on or after September 2, 2013.[55] Plaintiff had first approached Defendants about public funding in May 2013. Plaintiffs argue that their May 2013 to September 2, 2013 claims are not time-barred because of equitable tolling principles and an "entitlement to access to complete remedies."[56]

*1. Because a two-year statute of limitations applies to IDEA Part C claims, Plaintiffs are barred from relief for violations occurring before September 2, 2013.*

IDEA Part C does not have its own statute of limitations. The United States Department of Education ("DOE"), however, uses IDEA Part B's two-year statute of limitations through a regulation.[57] Under the regulation, a parent "must request an impartial hearing on their due process complaint within two years of the date the parent . . . knew, or should have known, about the alleged action that forms the basis of the due process complaint . . . ."[58]

---

[53] Doc. 49 at 21-25.
[54] Doc. 1-1 at 13.
[55] *Id.* at 14.
[56] Doc. 49 at 16.
[57] *See* 34 C.F.R. § 303.443(e).
[58] *Id.* The regulations' statute of limitations and exceptions language closely mirrors IDEA Part B's language. Accordingly, this Court incorporates some IDEA Part B analysis into its statute of limitations discussion. *Compare* 20 U.S.C. § 1415(C) (IDEA Part B) ("A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint") *with* 34 C.F.R. § 303.443(e) ("A parent, lead agency, or EIS provider must request an impartial hearing on their due process complaint within two years of the date the parent, lead agency, or EIS provider knew or should have known about the alleged action that forms the basis of the due process complaint"); *compare* 20 U.S.C. § 1415(D) (IDEA Part B) ("The [two-year] timeline . . . shall not apply to a parent if the parent was prevented from requesting the hearing due to (i) specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint; or (ii) the local educational agency's withholding of information from the parent that was required under this subchapter to be provided to the parent.) *with* 34 C.F.R. § 303.443(f) ("The [two-year] timeline . . . does not apply to a parent if the parent was prevented from filing a due process complaint

-8-

Case No. 1:16-CV-773
Gwin, J.

The DOE regulations also use two statute of limitations exceptions from IDEA Part B. Claims beyond the two-year mark are permissible where (1) there were "specific misrepresentations by the lead agency or EIS [Early Intervention Specialist] provider that it had resolved the problem forming the basis of the due process complaint," or (2) "[t]he lead agency[] or EIS provider[] fail[ed] to provide the parent information that was required under [IDEA Part C] to be provided to the parent."[59]

After complaint from the United States Department of Education, Ohio began funding IDEA Part C on September 5, 2013. Plaintiffs had been earlier told in May 2013, that Ohio did not cover Help Me Grow sessions. Plaintiffs renewed their pursuit of remedial funding in October 2013.[60]

Plaintiffs filed their due process complaint with the Ohio Department of Health on September 2, 2015. The ODH Hearing Officer thus properly barred relief for violations occurring before September 2, 2013.[61]

*2. The common law doctrine of equitable tolling does not apply to Plaintiffs' IDEA Part C claims.*

Plaintiffs argue that equitable tolling applies to save their pre-September-2013 claims. Because they first filed a separate complaint in federal court in September 2014, Plaintiffs argue that the government agencies had notice of their claims.[62]

---

due to (1) Specific misrepresentations by the lead agency or EIS provider that it had resolved the problem forming the basis of the due process complaint; or (2) The lead agency's or EIS provider's failure to provide the parent information that was required under this part to be provided to the parent.").
[59] 34 C.F.R. § 303.443(f).
[60] Doc. 38-5 at 349-50 (sealed).
[61] Doc. 1-1 at 13-14.
[62] Doc. 49 at 19.

Case No. 1:16-CV-773
Gwin, J.

Plaintiffs' argument normally would hold water. Federal statutes of limitations are "normally subject to a 'rebuttable presumption in *favor*' of equitable tolling."[63] And indeed, the state government agencies became aware of Plaintiffs' claims in September 2014 when the Plaintiffs erroneously filed their due process complaint in federal court.

However, canons of construction and legislative intent counsel against equitable tolling for the Ruhls' IDEA claims.

First, the doctrine of *exclusion unis* precludes common law equitable tolling in this case. Where legislative drafters "explicitly enumerate[] certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of a contrary legislative intent."[64] Here, the DOE regulations explicitly give two exceptions to the two-year statute of limitations. Against a backdrop where the Department of Education has given two explicit statute of limitation exceptions, the Court cannot find a third exception to save the Plaintiffs' claim.

Second, Congress expressly rejected equitable tolling for IDEA claims. The DOE's IDEA Part C regulations replicate, almost verbatim, language from IDEA Part B. IDEA Part B's legislative history indicates that Congress intended the IDEA's statute of limitations to have just two exceptions. The Senate's Committee on Health, Education, Labor, and Pensions, for example, was quite explicit: "The bill also provides for exceptions to the [two-year] timeline in limited instances. The committee does not intend that common law determinations of statutes of limitation override this specific directive . . . or [the] regulatory timeline."[65]

Likewise, when promulgating IDEA regulations, the Secretary of the Department of Education confirmed that the regulations' deadlines were firm. The Secretary stated:

---

[63] *Holland v. Florida*, 560 U.S. 631, 645-46 (2010) (quoting *Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 95-96 (1990)).
[64] *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980); *see also D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 248 (3d Cir. 2012).
[65] S. Rep. No. 108-185, at 40 (2003).

Case No. 1:16-CV-773
Gwin, J.

"[C]ommon-law directives regarding statutes of limitations should not override the Act or State regulatory timelines."[66] "[T]he Act and these regulations prescribe specific limitation periods which supersede common law directives in this regard."[67]

Thus, "the IDEA's statutory scheme is readily apparent, granting exceptions only for conduct by state and local educational officials that impedes the prompt channeling of claims through administrative proceedings."[68] "The very heart of the IDEA—children—demands a time-sensitive approach to effectively accomplish the tasks of evaluating children's needs, and describing, meeting and measuring their annual goals."[69] This time-sensitive approach is particularly relevant for IDEA's Part C, which applies to infants and toddlers three years or younger. The IDEA's statutes of limitations supports the principle that parental vigilance is critical to preserving and enforcing special educational rights.

Plaintiffs blame their complaint's tardiness on "governmental misrepresentation and runaround."[70] Plaintiffs fail to provide any supporting evidence, however. Bare assertions like these do not warrant equitable tolling.

*3. This Court declines to extend Plaintiffs' remedies beyond the statute of limitations period.*

Citing a Third Circuit case, Plaintiffs attempt to distinguish their untimely claims from the remedies that they seek.[71] In *G.L., et al. v. Ligonier Valley Sch. Dist. Auth.*,[72] the Third Circuit emphasized that the IDEA's statute of limitations is a *filing* deadline that should not affect the "crafting of the remedy."[73] Quoting IDEA legislative history, the Third Circuit noted

---

[66] 71 Fed. Reg. 46,540, 46,697 (Aug. 14, 2006).
[67] *Id.*
[68] *Holden v. Miller-Smith*, 28 F. Supp. 3d 729, 738 (W.D. Mich. 2014).
[69] *Id.*
[70] Doc. 49 at 18.
[71] *Id.* at 20-21.
[72] 802 F.3d 601 (3d Cir. 2015).
[73] *Id.* at 624 (quoting 150 Cong. Rec. S11851 (daily ed. Nov. 24, 2004) (statement of Sen. Tom Harkin)).

-11-

that the statute of limitations "is not designed to have any impact on the ability of a child to receive compensatory damages for the entire period in which he or she has been deprived of services."[74] The Third Circuit concluded that the IDEA statute of limitations "runs from the date of reasonable discovery and [is] not . . . a cap on a child's remedy for timely-filed claims that happen to date back more than two years before the complaint is filed."[75]

The remedy distinction in *G.L.* is not applicable here. W.R.'s mother testified that she became aware on May 2, 2013, of Help Me Grow's failure to provide ABA therapy—the action that is the basis of the Ruhls' complaint and triggers the statute of limitations.[76] Indeed, the family inquired about the complaint process on May 2, 2013.[77] The Ruhls "knew or should have known" of the alleged violation in May 2013. However, they waited until September 2, 2015 to file a due process complaint for a remedy for the May 2013 to December 2013 period.

This Court will not extend the Ruhls' remedy period to violations before September 2013. The Third Circuit's *G.L.* decision applies when a party has filed a complaint within two years of reasonably discovering a deprivation of services. For example, suppose that a state deprived a child of special education services from 2011 through 2017, but the parents did not reasonably learn about the deprivation until January 2016. If the parents file a complaint by January 2018, they are entitled to a remedy for the entire deprivation period, starting in 2011. That is not the case here. The Ruhls filed their complaint more than two years after the deprivation discovery; they cannot reformulate the expired claims as a "continuous violation."

Otherwise, the IDEA statute of limitations would be ineffective. Again, suppose that a state deprived a child of special education services from 2011 through 2017. Now, however, the

---

[74] *Id.*
[75] *Id.* at 616.
[76] Doc. 38-9 at 25, 107.
[77] Doc. 38-5 at 177-78.

parents learn about the deprivation in 2013. Under the Plaintiffs' theory, even if the parents did not bring a complaint until 2017, they would still be entitled to a remedy dating back to 2011 because the violation was continuous. According to Plaintiffs, as long as a complaint relates to *some* timely violation, relief could extend back to untimely but related claims.

This Court declines to interpret IDEA's statute of limitations by combining timely and expired claims into a single violation. The Ruhls failed to file their complaint within two years of learning of the state's alleged deprivation of services, and they are not entitled to remedies for periods beyond two years before they made their complaint.

*4. Plaintiffs' motion to strike is denied.*

Plaintiffs also filed a motion to strike Defendant Ohio Department of Health's statute of limitations arguments, arguing that they were "false and erroneous."[78] Plaintiffs' motion is effectively a sur-reply, ignoring that it is the *Court's* role to determine the law. Because the Court agrees with Ohio Department of Health's interpretation of the law, the Court **DENIES** Plaintiffs' motion to strike**.**

**B. The hearing officer properly concluded that the Ruhls failed to offer proof that they would have qualified for publicly funded ABA services before November 2013.**

According to the hearing officer, the Ruhl family did not show evidence of financial eligibility for publicly funded ABA until they filed an EISOP application in November 2013.[79] Responding, the Ruhls argue that they qualified for publicly funded ABA before November 2013, but Help Me Grow "failed to process the financial information."[80] The Ruhls suggest that

---

[78] Doc. 56.
[79] Doc. 1-1 at 13.
[80] Doc. 49 at 14.

Help Me Grow's "culpable conduct" is responsible for "shutter[ing]" W.R.'s "opportunity for the life promised him by the IDEA."[81]

While there is little evidence corroborating the Ruhls' allegations, there is sufficient evidence to support the hearing examiner's conclusion. In order to receive EISOP-funded early intervention services through Help Me Grow, a family must apply and demonstrate financial eligibility.[82] The Ruhls did not apply until November 2013. Their income initially disqualified them from publicly funded ABA in November 2013. The Ruhls then submitted evidence of their medical expenses, and the Ohio Department of Health approved them for EISOP family cost share on December 18, 2013.[83]

At their hearing, the Ruhls failed to present evidence that they were financially eligible for publicly funded ABA therapy before November 2013. And before this Court, they cannot point to specific evidence of their financial eligibility. Finger pointing to HMG's "culpable conduct" and making emotional appeals[84] are insufficient. The hearing examiner's decision was sufficiently supported; the Ruhls do not establish an IDEA violation.

**C. The hearing officer properly concluded that the IDEA does not permit the award of money damages, other than reimbursement.**

Plaintiffs seek $365,152 as "an award of funds for compensatory services" for W.R.[85] Plaintiffs apparently argue that the September 2013 to December 2013 delay in providing services requires large compensatory services. The hearing officer concluded that she lacked the statutory authority to award the Ruhls money damages.[86]

---

[81] *Id.*
[82] Ohio Adm. Code § 3701-8-08-1.
[83] Doc. 38-3 at 31-33 (sealed).
[84] Doc. 49 at 15.
[85] *Id.* at 21.
[86] Doc. 1-1 at 15.

Case No. 1:16-CV-773
Gwin, J.

Plaintiffs argue that the $365,152 award would not be money damages, but rather prospective reimbursement for compensatory education relief claimed to flow from the three-month IDEA benefit denial.[87] To reach this figure, Plaintiff's expert clinician, Dr. Aletta Sinoff, estimated the cost of compensatory early intervention services for W.R. and then doubled the amount.[88] Defendant Ohio Department of Health counters that (1) the relief sought is impermissible money damages and (2) expert testimony alone cannot justify doubling the alleged damages.[89]

Under the IDEA, courts may award various forms of retroactive and prospective equitable relief, including tuition reimbursement, compensatory education, and other declaratory and injunctive relief.[90] The IDEA therefore creates a right to receive "reimbursement [of] expenses" that "should have [been] paid all along."[91] Courts, however, cannot "award general 'damages' for violation of duties imposed by the Act."[92]

As an initial matter, Plaintiffs failed to prove at their hearing that they were entitled to any relief, monetary or not. The Plaintiffs' entitlement to reimbursement depended on their eligibility for financial assistance. As discussed above, the Ruhls failed to offer evidence that they qualified for publicly funded ABA services before November 2013. Thus, there is no IDEA violation to remedy.

---

[87] Doc. 54 at 7.
[88] Doc. 49 at 21.
[89] Doc. 50 at 12.
[90] *See Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369 (1985).
[91] *Crocker v. Tenn. Secondary Sch. Athletic Ass'n*, 980 F.2d 382, 386 (6th Cir. 1992) (internal quotations omitted); *see also Gean v. Hattaway*, 330 F.3d 758, 774 (6th Cir. 2003) ("[The court's] discretion to award monetary damages under this statute extends only to restitution for money that should have been paid by the state for educational services . . . .").
[92] *Hall v. Knott County Bd. of Educ.*, 941 F.2d 402, 407 (6th Cir. 1991); *see also Long v. Dawson Springs Indep. Sch. Dist.*, 197 F. App'x 427, 432 (6th Cir. 2006) ("No monetary damages may be awarded . . . under the IDEA.").

Additionally, Plaintiffs' requested damages amount to compensatory damages and are therefore not available under the IDEA. Although IDEA equitable relief may be in the form of reimbursement, the relief sought by Plaintiffs is not merely restitution for money that the state should have provided.

The rationale behind Dr. Sinoff's $365,152 estimate indicates the award sought is more than reimbursement for compensatory services. In her expert testimony, Dr. Sinoff explained how she reached that figure:

> [T]he goal is that . . . a child should, to the greatest extent possible, not be a drain on receiving special education services once he enters school and ultimately be able to lead an independent life . . . . [I]t is fair to not just give [W.R.] what he lost, but to offer him an additional opportunity to do what we can . . . . [G]iving [W.R.] just what he lost wouldn't be reasonable, in my professional opinion. Giving him double what he lost would be reasonable.[93]

When asked how she arrived at her specific figure, Dr. Sinoff stated, "there's no mathematical computation for this. There's no algorithm."[94] Dr. Sinoff's testimony confirms that Plaintiffs seek compensatory damages, relief beyond reimbursement or restitution. The vague figure sought by Plaintiff is not the equitable relief envisioned by the IDEA's drafters.

Cloaking compensatory damages as equitable relief here "'would transform the IDEA into a remedy for pain and suffering, emotional distress, and other consequential damages . . . . Such a result would be inconsistent with the structure of the statute, which so strongly favors the provision of and, where appropriate, the restoration of educational rights.'"[95]

The hearing examiner properly declined to award the Plaintiffs monetary damages.

---

[93] Doc. 38-7 at 81-82.
[94] *Id.* at 82.
[95] *Horen v. Bd. of Educ. Of City of Toledo Pub. Sch. Dist.*, 655 F. Supp. 2d 794, 799 (N.D. Ohio 2009) (quoting *Sellers by Sellers v. Sch. Bd. of City of Manassas, Va.*, 141 F.3d 524, 529 (4th Cir. 1998)).

Case No. 1:16-CV-773
Gwin, J.

## IV. CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the hearing examiner's decision, **DENIES** Plaintiffs' motion for summary judgment, and **DENIES** Plaintiffs' motion to strike.

IT IS SO ORDERED.


Dated: April 13, 2017                                        *s/        James S. Gwin*
                                                             JAMES S. GWIN
                                                             UNITED STATES DISTRICT JUDGE